IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 5:24-CR-116 |
| Plaintiff, | |
| -vs- | |
| | JUDGE PAMELA A. BARKER |
| JAMES TYRONE HILL, JR., | |
| Defendant. | MEMORANDUM OPINION & ORDER |

This matter is before the Court upon Defendant James Tyrone Hill Jr.'s ("Defendant" or "Hill) Motion in Limine filed on May 5, 2025 ("Defendant's First Motion") and Defendant's Motion in Limine to Exclude Reference to Certain Evidence at Trial, also filed on May 5, 2025 ("Defendant's Second Motion").  (Doc. Nos. 48, 49.)  On May 12, 2025, the United States of America filed a combined Response to Defendant's First Motion and Second Motion ("the Government's Response").  (Doc. No. 50.)  On May 19, 2025 Defendant filed a Reply in Support of Defendant's Motions ("Defendant's Reply").  (Doc. No. 51.)  Accordingly, Defendant's Motions are ripe for a decision.

**Background**

On October 27, 2022, Hill was on post-release control and being supervised by the Ohio Adult Parole Authority ("APA"). Upon receiving information that Hill might be involved in a murder-for-hire plot, the APA, with the assistance of the Canton Police Department conducted a home visit of Hill's APA approved home address.  While APA officers were speaking with Hill in the kitchen of his residence, Officer Paolucci was in the living room looking for contraband in plain view.  He noticed a safe with its door cracked open and upon approach, smelled marijuana and saw marijuana

spilling out from the safe.  Upon opening the safe, Officer Paolucci saw marijuana residue and a bullet at the bottom of the safe.  Photographs of the contraband were taken, Hill was officially detained, and the parole officers conducted a protective sweep of the premises and then a parole search.  According to Defendant, the photographs of the marijuana and bullet were taken but not retained and the actual marijuana and bullet were not collected or retained;[1] therefore, it is unknown what kind of bullet was found in the safe.  (Doc. No. 49, PageID #s 235-36.)

It was during the parole search that officers located a firearm and ammunition in the attic stairway, which is the basis for the charges against Hill, specifically: Felon in Possession of Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1) and 924(a)(8); and Possession of a Firearm and Ammunition by a Person with Domestic Violence Convictions in violation of 18 U.S.C. § 922(g)(9) and 924(a)(8).

According to Defendant, at trial he will stipulate that when the firearm was found he had a prior felony conviction and a prior domestic violence conviction, knew of his convictions, and that the firearm and ammunition were manufactured outside the State of Ohio.  (Doc. No. 49, PageID # 234.)  According to Defendant, "[t]he narrow issue in dispute at trial is whether Mr. Hill knew the firearm was in his residence and thereby possessed it."  (*Id.*)  And Hill may choose to testify at trial concerning the elements of the offenses with which he is charged, i.e., knowledge and possession.

Hill has the following prior felony convictions:  (1) Carrying a Concealed Weapon, in Case No. 2013-CR-1455; (2) Domestic Violence, and Trespass into Habitation, in Case No, 2015-CR-2015; (3) Violating Protective Order and Domestic Violence, in Case No. 2015-CR-1715; (4) Having

---

[1] In the Government's Response, the United States does not dispute this representation.

Weapons While Under Disability, in Case No. 2019-CR-1566; and (5) Violating Protective Order in Case No. 2020-CR-0406.  (Doc. No. 48, PageID #s 226-27.)

In Defendant's First Motion, Hill contends that his Carrying a Concealed Weapon conviction is inadmissible under Rule 609(b) because more than 10 years has passed since his release from a term of imprisonment imposed for that conviction; and asserts that the remaining felony convictions should be excluded for purposes of impeachment because their probative values do not outweigh their prejudicial effects, citing Federal Rule of Evidence 609(a)(1)(B).[2]  (Doc. No. 48, PageID # 227-29.) In the Government's Response, the United States represents that it does not intend to introduce Hill's Carrying a Concealed Weapon conviction,[3] but it argues that an evaluation of the factors this Court must consider in determining the admissibility of a prior felony for impeachment purposes weigh in favor of allowing cross-examination of Hill about his prior convictions.  In Defendant's Reply, Hill asserts that the Government does not specifically identify which prior criminal convictions it wishes to use, or why those criminal convictions are specifically more probative than prejudicial, and that the Government has failed to offer any reason why specifics of the underlying offenses would be probative evidence.  According to Hill, "if the Court were to permit cross examination on Mr. Hill's prior convictions, simply allowing the government to ask Mr. Hill if he was convicted of a felony in the corresponding year would serve the function the government seeks. *See United States v. Christin Shamar Smith*, No. 5:24-CR-406, Dkt. 42 (N.D. Ohio April 30, 2024) (excluding nature of prior

---

[2] Fed. Evid. R. 609(a)(1)(B) provides that "the following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:  (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:  *** (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant[.]"

[3] (Doc. No. 50, PageID # 243.)  The Court finds that the Government may not introduce evidence of Hill's Carrying a Concealed Weapon conviction.

3

convictions because 'the probative value of Smith's convictions, [] is based not on the particular elements of the felony, but on the fact of conviction itself.').'"  (Doc. No. 51, PageID # 247-48.)

In Defendant's Second Motion, Hill asks this Court to preclude the Government from introducing any evidence or testimony referencing the reason the parole officers visited his home on October 27, 2022,[4] asks this Court to exclude any reference to the marijuana and bullet found in the living room safe, and moves to exclude any testimony regarding why he was on parole at the time of the search.[5]  According to Hill, any reference to the evidence of the marijuana and bullet found in the safe at Hill's home is not relevant to the issue of whether he possessed the firearm and ammunition in the attic stairwell and more specifically, whether he knew the firearm was there when it was found on October 27, 2022; and even if tangentially relevant the evidence is more prejudicial than probative. And, anticipating the Government's argument that the marijuana and bullet are inextricably intertwined with the search because it was upon finding this evidence that the parole officers decided to conduct a parole search, Defendant contends that this does not make it *res gestae* evidence, i.e., evidence "'consisting] of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense.'"  (Doc. No. 49, PageID # 236, quoting from *United States v. Olds*, 309 F. App'x. 967, 974 (6th Cir. 2009) (quoting *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)).  According to Defendant, "[t]he story of the search in this case can easily be told without any reference to the marijuana or bullet.

---

[4] Hill represents that the Government has agreed not to introduce evidence of the murder-for-hire plot or the reason for the home visit.  (Doc. No. 49, PageID # 234.)  In the Government's Response, the United States does not dispute this representation.  The Government is ordered not to introduce any evidence of the murder-for-hire plot or the reason for the home visit.

The prosecutor need only begin the questioning of the witnesses at the time of the search." (Doc. No. 49, PageID # 236.)  Per Hill, since he will not and cannot contest the validity of the search, the parole officers need only testify about what happened during and after the search and "[t]he marijuana and bullet are not so inextricably intertwined with the finding of the firearm in the attic that the jury cannot understand what occurred that day."  (*Id.*)

In the Government's Response, the United States does argue that the bullet and marijuana are intrinsic, relevant pieces of evidence and should be admissible at trial.  Specifically, the Government contends that "with the other evidence [the bullet] does act as circumstantial evidence that [Hill] had knowledge of the firearm and possessed it."  (Doc. No. 50, PageID # 245.)  According to the Government, the fact that the bullet was not taken by law enforcement "goes to the weight of the evidence rather than the admissibility[,]" and "[t]hus, the bullet along with what was found with it, the marijuana, should be admissible as proof of two of the elements of the case[,]" i.e., knowledge and possession.  (*Id.*)  The Government asserts that the "[t]he recovery of the bullet and marijuana triggered all the events of this case[,]" the finding of it "assists in telling the story of the incident[,]" and "[w]ithout the recovery of these items, there are gaps in the timeline and in the story which could prejudice the United States."  (*Id.*, at PageID #s 245-46.)

In Defendant's Reply, Hill points out that while the Government concludes that the marijuana residue should be admissible as proof of the two elements of the offenses with which he is charged, i.e., knowledge and possession, it offers no explanation as to how the marijuana residue goes to these elements.  (Doc. No. 51, PageID # 248.)

**Analysis**

The Sixth Circuit has "[a]dopted the reasoning of the leading case, *Gordon v. United States*, 383 F.2d 936, 940 (D.C.Cir.1967)" to "espouse[] the following factors as pertinent to the trial judge's determination of the admissibility of a prior felony for impeachment purposes:  '(1) The impeachment value of the prior crime. (2) The point in time of the conviction and the witness' subsequent history. (3) The similarity between the past crime and the charged crime.  (4)  The importance of the defendant's testimony. [and] (5) The centrality of the credibility issue." *United States v. Frazier*, 314 Fed. Appx. 801, 804 (6th Cir. 2008)(quoting *United States v. Moore*, 917 F.2d 215, 234 (6th Cir. 1990)).  The Sixth Circuit explained that "[w]hile noting that consideration of theses factors is not mandatory, we have required trial judges to make a finding on the record that the conviction's probative value outweighs its prejudicial effect." (*Id.*) (quoting *United States v. Meyers*, 952 F.2d 914, 916-17 (6th Cir. 1992))

As for the Hill's prior crimes of domestic violence, trespass into a habitation, violating a protective order, and having weapons while under disability, these are not crimes that involve truth or veracity.  And while they may have some impeachment value, Hill has represented that he will stipulate to having a prior felony conviction and a prior domestic violence conviction as these are elements of the crimes with which he has been charged in Counts 1 and 2, respectively.  And, according to Hill, he will admit that he has multiple felony convictions.  (Doc. No. 48, PageID # 228.) Hill's stipulation mitigates or counters the impeachment value of the actual charges of these prior crimes, making this factor neutral.

As for the point in time of the conviction and the witness' subsequent history, the sentences associated with these prior crimes occurred in late 2015 and the first half of 2020, or approximately

6

7 years and over 2 years before the firearm was found in his residence on October 27, 2022,[6] and almost 10 years and approximately 5 years prior to the scheduled trial.  Hill has not been convicted of any felonies since 2020.[7]  As for the 2015 convictions for domestic violence, trespass into habitation and violating a protective order, and although within the 10-year window under Rule 609(b). this factor weighs against allowing the Government to impeach Hill by soliciting information concerning these 2015 convictions.  However, as to the 2020 convictions for Having Weapons While Under Disability and Violating a Protective Order and given Hill's criminal history of misdemeanor convictions subsequent to those 2020 convictions, this factor weighs in favor of allowing the Government to impeach Hill by soliciting information concerning these 2020 convictions.  *See Frazier*, 314 Fed. Appx. at 805 (where the Court explained that "the consideration of this factor would only have tilted the balance further towards admissibility since the prior conviction was only four years prior, undeniably with the ten-year limit of Rule 609(b), and Frazier had also been charged with possession of marijuana since that conviction.")

Regarding the similarity between the past crime and the charged crime, certainly Hill's conviction for Having Weapons Under Disability is very similar to the crimes with which he is charged herein, i.e., Felon in Possession of a Firearm.  The similarity of this prior conviction weighs against allowing the Government to impeach Hill by soliciting information about this conviction.  *See Frazier*, 314 Fed. App'x at 804 ("When the prior conviction is the very same crime, it should be

---

[6] Hill's conviction for Having Weapons While Under Disability occurred in May of 2020 or just shy of two and one-half years before the search of his residence that revealed the firearm that is the subject of this case.

[7] The Pretrial Services Report demonstrates the following.  Hill was convicted of Obstructing Office Business, an M2, on March 8, 2022 in the Canton Municipal Court, Case No. 2021CRB05042; and Hill was charged with Domestic Violence in Canton Municipal Court, Case No. 2023CRB02167, but the charge was amended to Aggravated Menacing and he was found guilty of that amended charge on March 8, 2024, shortly before his arrest in this case.  (Doc. No. 6, PageID #s 18-19.)

admitted as impeachment evidence sparingly.") (citation and quotation marks omitted.)  Indeed, because of the similarity of Hill's prior conviction for Having Weapons While Under Disability with the two crimes with which he is charged in this matter, there is a risk that the jury will rely on the details of this prior conviction not just for its impeachment value, but to draw an improper propensity inference. *See United States v. Christin Shamar Smith*, No. 5:24-CR-406, Doc. No. 42, PageID # 308 (N.D. Ohio April 30, 2024.)

As for the importance of Defendant's testimony, it is the Court's understanding from a review of Defendant's First Motion that Defendant may testify for the purpose of demonstrating that he did not have knowledge of the firearm in the attic stairwell, and he did not possess it.  His testimony then, will be important to attempt to refute the Government's proof that he did have knowledge of, and possessed the firearm.  Accordingly, the jury's evaluation of Hill's credibility will be very important in determining whether the Government has met its burden of proving beyond a reasonable doubt that Hill had knowledge of the firearm and possessed it on October 27, 2022.  This factor weighs in favor of allowing the Government to impeach Hill with the specifics of his prior 2020 convictions.

As for the final factor the Court must evaluate, i.e., the centrality of the credibility issue, this weighs in favor of allowing the Government to impeach Hill with the specifics of his prior 2020 convictions.  Hill's expected testimony refuting his knowledge and possession of the firearm in his residence is central to the case; if he did not have knowledge of and did not possess the firearm, he cannot be convicted of the two charges in the Indictment.  The impeachment evidence will be important to allow the jury to assess Hill's testimony since his credibility will be crucially determinative.  By taking the stand to refute his knowledge and possession of the firearm found in

his residence, Hill will be placing his credibility squarely at issue and his credibility will be "crucially determinative." *See Frazier*, 314 Fed. Appx. at 805.

Thus, the first factor is neutral as to all of Defendant's prior felony convictions. The second factor weighs against admitting evidence of the charges that Hill was convicted of in 2015 but weighs in favor of admitting evidence of the two charges that Hill was convicted of in 2020. The third factor weighs against admitting evidence of the charge of Having Weapons Under Disability given the similarly between that charge and the two charges Hill faces at trial, because of the risk that the jury will draw an improper propensity inference, thereby prejudicing Hill. However, Court will give a limiting instruction to the jury both at time the evidence is admitted and before jury deliberation that presumably the jury will follow, to alleviate any potential for the jury to draw an improper propensity inference and thereby prejudice Defendant. The third factor weighs in favor of admitting the evidence of the charge of Violating a Protective Order that Hill was convicted of in 2020 because there is no similarity between that charge and the two charges Hill faces at trial. And the fourth and fifth factors weigh in favor of admitting evidence of both charges that Hill was convicted of in 2020. Accordingly, the Court finds that the probative value of the two 2020 convictions for Having Weapons Under Disability and Violating a Protective Order outweighs their prejudicial effect, with the appropriate limiting instruction to be given to the jury at the time the evidence or testimony is elicited and immediately before jury deliberations. And because on October 27, 2022 Hill would have been on parole associated with his 2020 conviction(s), the Government will be permitted to reference why he was on parole at the time of the offenses with which he is charged in this case.

"Background or *res gestae* evidence is an exception to Rule 404(b)." *United States v. Adams*, 722 F.3d 788,  810 (6th Cir. 2013). *See also United States v. Clay*, 667 F.3d 689, 697 (6th Cir. 2012).

Background evidence "consists of those other acts that are inextricably intertwined with the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). "Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense."  *Id.*  Concerned with the potential for abuse of background evidence as a means to circumvent Rule 404(b), the Sixth Circuit has recognized "severe limitations as to 'temporal proximity, causal relationship, or spatial connections' among the other acts and the charged offense." *Clay*, 667 F.3d at 698 (quoting *Hardy*, 228 F.3d at 749).  *See also United States v. Wardle*, 842 Fed. Appx. 993, 996 (6th Cir. 2021) (noting that the background circumstances exception to Rule 404(b) is "limited"); *Adams*, 722 F.3d at 810.

The Court finds that the existence of the bullet and marijuana found in an open safe in Hill's living room that resulted in a search of Hill's residence on October 27, 2022 and the charges in this case are not inextricably intertwined with the charged offenses.  That Officer Paolucci saw the bullet and marijuana in a slightly ajar safe is only a prelude to the charged offenses because finding that contraband gave the APA officers and Canton police officers cause to conduct the search of Hill's residence; but their existence at Hill's residence does not have any real relation or relevance to the charged offenses and they are not directly probative of the charged offenses.  Indeed, there is no evidence of the kind of bullet found so as to attempt to link it to the firearm and ammunition found elsewhere in Hill's residence that is the subject of the offenses at issue in this case.  Because there is no such evidence, Defendant will not be able to counter any argument or speculation that the bullet matches the firearm and/or other ammunition found in the attic and therefore, Defendant must have known about the firearm.   The bullet and marijuana do not form an integral part of the officer(s)'

testimony(ies) and do not complete the story of the charged offense.  As Defendant points out, the Government will be free to elicit evidence that Hill was under the supervision of the Adult Parole Authority and that the officers were conducting a search of Hill's residence when they located the firearm.  Accordingly, the Court finds that the Government is precluded from introducing evidence of the bullet and marijuana found in Hill's residence because it is not relevant, it does not qualify as *res gestae* evidence, and any potential probative value is substantially outweighed by the danger of unfair prejudice.

### Conclusion

For the foregoing reasons, Defendant's First Motion (Doc. No. 48) is granted in part and denied in part, as follows.  The Government is not permitted to introduce any evidence of Defendant's 2014 conviction for Carrying a Concealed Weapon and his 2015 convictions, but is permitted to introduce evidence of Defendant's 2020 convictions, and the Court will give a limiting instruction to the jury.  Also, Defendant's Second Motion (Doc. No. 49) is granted in part and denied in part, as follows.  The Government can introduce evidence of the reason that Defendant was on parole but is precluded from introducing evidence of the bullet and marijuana found in Hill's residence on October 27, 2022, and is precluded from introducing any evidence concerning the murder-for-hire plot that formed the basis for the home visit of of the APA officers and Canton police officers on October 27, 2022.

**IT IS SO ORDERED.**

     *s/Pamela A. Barker*
     PAMELA A. BARKER
Date:  May 20, 2025     U. S. DISTRICT JUDGE